IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

SANITARY BOARD OF THE
CITY OF CHARLESTON, WEST VIRGINIA,

    Plaintiff,

v.

Civil Action No. 2:16-cv-03060 _____

GINA MCCARTHY, in her official capacity as the
Administrator of the United States Environmental
Protection Agency; and
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

    Defendants.

## COMPLAINT

The Sanitary Board of the City of Charleston, West Virginia ("Plaintiff" or "Charleston Sanitary Board"), files this Complaint and alleges as follows:

### INTRODUCTION

1. This is a citizen suit against the United States Environmental Protection Agency and the Administrator of the Environmental Protection Agency ("EPA," collectively) for failing to perform the nondiscretionary duty to timely approve a site-specific water quality standard for copper for the Charleston Sanitary Board (hereinafter, "CSB Copper Standard"). The CSB Copper Standard was developed using EPA's methodology to be fully protective of aquatic life in the Kanawha River, approved by the West Virginia Department of Environmental Protection ("WVDEP"), adopted by the West Virginia Legislature, and submitted to EPA for approval in accordance with the Clean Water Act ("CWA"). The CWA sets the exclusive criteria for EPA's review of state water quality standards and the express deadline by which EPA's review must be completed. To this day, EPA has refused to fulfill its statutory duty to approve (or disapprove)

the CSB Copper Standard—months after the statutory deadline has passed. EPA's sole stated reason for not fulfilling this statutory duty is its desire to consult with another federal agency despite EPA's consulting memorandum with that agency specifying that such consultations must not cause EPA to miss the CWA's statutory deadline.

2. As a result of EPA's failure to comply with the CWA, Charleston Sanitary Board is now subject to incorrect and overly stringent permit limits for the discharge of copper from its wastewater treatment plant. Violations of those limits carry maximum statutory penalties in excess of $1 million per month. Charleston Sanitary Board is powerless to seek relief from these unreasonable permit limits until EPA fulfills its statutory duty to approve the CSB Copper Standard.

3. Plaintiff is compelled to seek an order directing EPA to comply with its duty to timely approve the CSB Copper Standard.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a)(2) (Clean Water Act citizen suit). A present, actual, and justiciable controversy exists between the parties. The requested relief is proper under 28 U.S.C. § 2201 (declaratory relief), § 2202 (injunctive relief), and 33 U.S.C. § 1365(a) (action by EPA Administrator).

5. As required by 33 U.S.C. § 1365(b), Plaintiff served Defendant Gina McCarthy, Administrator of the EPA, a 60-day Notice of Intent by certified mail on December 18, 2015 (attached hereto as <u>Exhibit 1</u>). A copy of the same was mailed to Loretta Lynch, Attorney General of the United States, in accordance with 40 C.F.R. § 135.2(b).

6.	Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(e)(1) because Plaintiff resides in Charleston, West Virginia.

## PARTIES

7.	Plaintiff Charleston Sanitary Board is a public sewer utility created by the City of Charleston, West Virginia pursuant to W. Va. Code § 16-13-1 et seq.  Charleston Sanitary Board operates a wastewater collection system and treatment plant that provides service to approximately 25,000 residents in the City of Charleston and adjacent areas of Kanawha County. Plaintiff is a "citizen" within the meaning of 33 U.S.C. § 1365(g). *See* 33 U.S.C. § 1362(5).

8.	Defendant Gina McCarthy is the Administrator of the EPA. She is sued in her official capacity as Administrator.

9.	Defendant EPA is the federal agency charged with administering the CWA. Its rights and duties are more fully described below.

## STATUTORY AND REGULATORY REQUIREMENTS

10.	The CWA operates on the principle of cooperative federalism, with clearly defined roles for EPA and states. Notwithstanding EPA's outsized role in administering the Act, Congress expressly acknowledged that *states* retain their "primary responsibilities and rights" of determining how to use and protect their water resources. 33 U.S.C. § 1251(b).

11.	Consistent with this principle, states are charged with designating the intended uses for of each of their rivers and other waterbodies, such as fishing, swimming, or drinking water. 33 U.S.C. § 1313(c)(1); 40 C.F.R. § 131.10. States then determine what water quality criteria must be achieved for each river to support its designated uses. 33 U.S.C. § 1313(c)(1); 40 C.F.R. § 131.11. These water quality criteria often take the form of maximum instream concentrations of specific pollutants (e.g., copper).

12. The designated uses for a state's waters and the criteria established to meet those designated uses are referred to collectively as "water quality standards." 40 C.F.R. § 131.3(i).

13. In West Virginia, the WVDEP is the expert agency charged with developing the state's water quality standards. W.Va. Code § 22-11-7b(a). Water quality standards developed by WVDEP are adopted as legislative rules. These rules must be approved by the Legislature and signed by the Governor. *Id*. § 22-11-7b(c).

14. EPA's role in this process is limited to reviewing the state's water quality standards to verify that they satisfy the minimum requirements of the CWA. When a state finalizes new water quality standards, it submits them to EPA for review. 33 U.S.C. § 1313(c)(2). EPA has a nondiscretionary duty to take one of two actions: (1) notify the state within 60 days that the standards are approved or (2) notify the state within 90 days that the standards are disapproved. *Id*. § 1313(c)(3); 40 C.F.R. § 131.21(a). These statutory deadlines are mandatory and inflexible.

15. In addition to fixing a deadline for EPA's review of state water quality standards, the CWA also prescribes the *scope* of the review. If the state standards "meet the requirements of [the CWA]," they "*shall*" be approved. 33 U.S.C. § 1313(c)(3) (emphasis added); *see also* 40 C.F.R. §§ 131.21(b), 131.5(b). EPA has no authority or discretion to base its decision on any factors other than whether the standards "meet the requirements of the CWA."

16. Section 7 of the Endangered Species Act requires federal agencies to engage in consultation with the U.S. Fish and Wildlife Service ("USFWS") in certain circumstances before taking *discretionary* actions that could affect listed species. 16 U.S.C. § 1536(a); *see also* 50 C.F.R. § 402.03. However laudable the goals of that statute, the CWA does not require EPA to

consult with USFWS before approving state water quality standards. Nor does the CWA allow EPA to condition its approval of state water quality standards on prior approval by USFWS.

17. Even though EPA erroneously believes it has a duty to consult with USFWS before approving state water quality standards, the Agency's own guidance and precedent acknowledge that the consultation duty does not override the deadlines and requirements in CWA § 303(c). *See, e.g.*, *Memorandum of Agreement Between the Environmental Protection Agency, Fish and Wildlife Service and National Marine Fisheries Service Regarding Enhanced Coordination Under the Clean Water Act and Endangered Species Act*, 66 Fed. Reg. 11202, 11210 (Feb. 22, 2011) (stating that consultation must be expeditious to "enable EPA to meet statutory and regulatory deadlines under the CWA"); Letter from William K. Honker, EPA, to James P. Bearzi, N.M. Env't Dep't (Apr. 30, 2012) (providing EPA approval of New Mexico water quality standards *prior to* conclusion of USFWS consultation to comply with EPA's CWA § 303(c) obligations).

18. In sum, EPA's approval of West Virginia's water quality standards is not a discretionary action. The Agency has nondiscretionary duty to complete that review within the 60- or 90-day statutory timeframe and it has a nondiscretionary duty to approve the standards if they are consistent with the requirements of the CWA.

## STATEMENT OF FACTS

19. Charleston Sanitary Board is the public sewer utility for the City of Charleston, West Virginia. It operates a sewage collection system serving residential and industrial customers in Charleston and surrounding areas of Kanawha County. The sewage is treated at Charleston Sanitary Board's wastewater treatment plant before being discharged to the Kanawha River.

20. Discharges from Charleston Sanitary Board's wastewater treatment plant are governed by a National Pollution Discharge Elimination System ("NPDES") permit issued by WVDEP to comply with the CWA. The permit imposes pollutant-specific effluent limits that are designed to ensure that the plant's discharges do not cause pollutant levels in the Kanawha River to exceed the water quality standards established by WVDEP. *See* 40 C.F.R. § 122.44(d).

21. WVDEP has promulgated water quality criteria for copper levels in the Kanawha River to protect aquatic life. W. Va. Code R. § 47-2, App. E, Tbl. 1, § 8.10. These criteria mirror EPA's 1986 national recommended water quality criteria for aquatic life.

22. A well-known limitation of EPA's default national copper criteria is that they were developed in a laboratory setting using manufactured, deionized water. By contrast, natural river water is not pure; it is full of dissolved mineral and organic matter that varies from river to river. This dissolved material binds with dissolved copper, thereby making it biologically unavailable—that is, nontoxic—to organisms. Accordingly, under real-world conditions, aquatic organisms typically are not harmed by instream copper levels that are many times higher than EPA's default national copper criteria.

23. In recognition of this reality and to tailor its one-size-fits-all national copper criteria to the conditions of specific rivers, EPA developed a protocol called the *Streamlined Water-Effect Ratio for Discharges of Copper*. This protocol allows the development of a "water effect ratio" for specific waterbodies. A water effect ratio is expressed as a number that reflects how effectively a river's water reduces the aquatic toxicity of copper.

24. Water effect ratios are used to calculate *site-specific* water quality criteria for copper at a specific location of a river. These site-specific copper criteria are produced by multiplying the water effect ratio times EPA's national copper criteria. The resulting site-specific

6

criteria provide the same level of protection from toxicity in the specific river as EPA intended for its national criteria. Thus, the national criteria for lab water provide the same level of protection as a water effect ratio-adjusted copper limit for a specific stream anywhere in the country.

25. In 2012, after consultation with WVDEP, Charleston Sanitary Board began the process of developing a water effect ratio for the Kanawha River at the location of its wastewater treatment plant using EPA's protocol.

26. Following several years of work and collaboration with WVDEP, Charleston Sanitary Board generated a water effect ratio of 5.62. This water effect ratio is used to calculate the site-specific copper criteria applicable to the discharges from Plaintiff's wastewater treatment plant.

27. EPA's national copper criteria were designed to be protective of all aquatic species. Charleston Sanitary Board's site-specific copper criteria merely translate that default number to local water conditions. If EPA's national criteria are protective, then the site-specific (i.e., water effect ratio-derived) copper standard developed for the Kanawha River must be protective of aquatic species as well.

28. In June 2014, WVDEP published a proposed legislative rule to revise the state's water quality standards for public review and comment. The proposal included the water effect ratio-adjusted CSB Copper Standard developed for the Kanawha River, which would be codified at W. Va. Code R. § 47-2-7.2.d.19.2 and reads as follows: "Pursuant to 46 CSR 6, a Copper Water Effect Ratio (WER) of 5.62 shall be applied to The Sanitary Board of the City of Charleston, West Virginia wastewater treatment plant discharge of total recoverable cooper to Kanawha River, Zone 1."

29. WVDEP also provided the package of proposed water quality standards to EPA for preliminary review in June 2014.

30. Following the public comment period, the proposed water quality standards were approved by WVDEP in August 2014 and then by the Legislative Rule Making Review Committee in November 2014. The West Virginia Legislature approved the standards on March 12, 2015 (2015 H.B. 2283). The Governor signed them on March 31, 2015.

31. EPA was consulted by WVDEP extensively throughout this process. EPA provided formal written comments in a letter from Eveyln S. MacKnight, EPA, to Kevin Coyne, WVDEP, dated July 21, 2014, supporting the CSB Copper Standard. These comments stated:

> The U.S. EPA is supportive of . . . the copper water effect ratio (WER) for the Sanitary Board for the City of Charleston (47CSR2 7.2.d.19.2). EPA has reviewed the information on how the WER was derived and find that it is consistent with EPA current guidance in the March 2001 Streamlined Water-Effect Ratio Procedure for Discharges of Copper (EPA-822-R-01-005). Our only comment would be that the regulation needs to specify whether it is a dissolved or total recoverable WER.

32. In response to EPA's "only comment" on the CSB Copper Standard, WVDEP amended the proposed standard to clarify that it applies to "total recoverable copper."

33. The final water quality standards revisions, including the CSB Copper Standard (as revised to address EPA's prior comments), were submitted to EPA Region 3 on or about June 25, 2015, for formal review under CWA § 303(c), 33 U.S.C. § 1313(c).

34. As discussed above, CWA § 303(c) required EPA to notify WVDEP within 60 days if it approved the standards or within 90 days if it disapproved the standards. Accordingly, EPA's deadlines to respond were on or about August 24 and September 23, 2015, respectively.

35. EPA initiated consultation with USFWS regarding the CSB Copper Standard well in advance of the CWA § 303(c) deadlines—on or about May 15, 2015. On that date, Denise

Hakowski, EPA, sent an email to Kathleen Patnode, USFWS, transmitting the CSB Copper Standard and supporting information and requesting a response from USFWS. Thus, even if the consultation requirement applied, the process was initiated sufficiently in advance of the deadlines set by CWA § 303(c) to conclude any informal or formal consultation.

36. However, USFWS staff informed EPA that the Service would not concur with the standard until a survey of mussel species was conducted in the Kanawha River in the vicinity of Charleston Sanitary Board's wastewater treatment plant. EPA staff, in disregard of the Agency's statutory deadline to act, communicated to WVDEP on or about May 21, 2015, that it would not approve the CSB Copper Standard until it was approved by USFWS.

37. On or about October 2, 2015, EPA Region 3 Water Protection Division Director Jon Capacasa sent a letter to WVDEP Division of Water and Waste Management Director Scott Mandirola communicating EPA's approval of the state's water quality standards package *except* for the CSB Copper Standard. In spite of the statutory deadline, the letter stated:

> The submitted revisions also include a copper Water Effect Ratio for the Sanitary Board of the City of Charleston. This revision establishes a site-specific copper criterion for the protection of aquatic life in this segment of the Kanawha River. EPA is still considering the potential impact of this site-specific criterion on federally listed threatened and endangered species and is not taking a CWA 303(c)(3) action at this time. [emphasis added]

38. To date, EPA has not approved (or disapproved) the CSB Copper Standard.

39. Charleston Sanitary Board's NPDES permit includes a schedule of compliance that was intended to allow sufficient time for the CSB Copper Standard to be approved and for the NPDES permit's copper discharge limits to be revised accordingly. However, the permit provides that if Charleston Sanitary Board has not developed a water effect ratio for copper, it must design and construct costly upgrades to its outfall structure. Plaintiff sought a five-year compliance schedule but was limited by WVDEP and USEPA to three years.

40. The compliance schedule expired on December 31, 2015. As of that date, Charleston Sanitary Board has become subject to overly stringent permit limits for copper that are based on the default national copper criteria, rather than the site-specific criteria Plaintiff has invested substantial resources in developing. Charleston Sanitary Board cannot consistently achieve that permit limit. Charleston Sanitary Board also has become subject to a permit requirement to commence costly upgrades to its treatment plant to comply with copper limits that present no risk of ecological harm to aquatic life in the Kanawha River.

41. Because of EPA's unlawful delay in approving Charleston Sanitary Board's site-specific copper limit within the timeline set by the CWA, it faces a continuous threat of enforcement action from EPA, WVDEP, and/or citizen suit plaintiffs, as well as substantial unnecessary capital construction costs.

## COUNT I:
## Violation of Nondiscretionary Duty to Act Within the
## Deadline Prescribed by CWA § 303(c)
## (33 U.S.C. § 1313(c)(3))

42. Plaintiff incorporates by reference and realleges all of the preceding paragraphs of this Complaint.

43. WVDEP submitted duly adopted state water quality standards, including the CSB Copper Standard, to EPA for review on or about June 25, 2015.

44. EPA had a nondiscretionary duty to approve the CSB Copper Standard within 60 days or to disapprove it within 90 days—that is, by August 24 or September 23, 2015, respectively.

45. EPA has no lawful authority to ignore these statutory deadlines.

46. To date, EPA has not taken action to approve or disapprove the CSB Copper Standard—an intentional and continuing violation of 33 U.S.C. § 1313(c)(3) and 40 C.F.R. § 131.21(a).

## COUNT II:
### Violation of Nondiscretionary Duty to Approve State Water Quality Standards that Meet the Requirements of the CWA
### (33 U.S.C. § 1313(c)(3))

47. Plaintiff incorporates by reference and realleges all of the preceding paragraphs of this Complaint.

48. EPA has a nondiscretionary duty to approve any water quality standard submitted by a state that complies with the requirements of the CWA.

49. The CWA prescribes the criteria upon which EPA decisions on state water quality standards must be made, and the Agency is not empowered to create additional review criteria not found in the statute.

50. EPA has no statutory duty to consult with USFWS before approving state water quality standards. Nor does EPA have the authority to condition its approval of state water quality standards on the concurrence of USFWS.

51. The CSB Copper Standard submitted by WVDEP to EPA on or about June 25, 2015 complied with the requirements of the CWA. EPA acknowledged this in its July 21, 2014, formal written comments on the CSB Copper Standard.

52. The only stated reason for EPA's refusal to approve the CSB Copper Standard was because the Agency was "still considering the potential impact of this site-specific criterion on federally listed threatened and endangered species."

53. EPA's refusal to approve the CSB Copper Standard was based on a purported requirement that is *not* an approval consideration, much less a requirement, of the CWA, in violation of 33 U.S.C. § 1313(c) and 40 C.F.R. §§ 131.21(b) and 131.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sanitary Board of the City of Charleston, West Virginia, respectfully prays that this Court:

(a) Declare that EPA has violated its nondiscretionary duty under 33 U.S.C. § 1313(c) to timely review and approve state water quality standards that comply with the requirements of the CWA.

(b) Declare that EPA has violated its statutory authority under 33 U.S.C. § 1313(c) by conditioning its approval of the CSB Copper Standard on a purported requirement that is not found in and not permitted by the CWA.

(c) Order EPA to perform its nondiscretionary duty to approve the CSB Copper Standard within seven days of such order in accordance with 33 U.S.C. § 1365(a).

(d) Award Plaintiff litigation costs in accordance with 33 U.S.C. § 1365(d).

(e) Grant such other relief as the Court may deem appropriate.

        Respectfully submitted,

        SANITARY BOARD OF THE CITY OF CHARLESTON, WEST VIRGINIA

        By Counsel:

        /s/ F. Paul Calamita
        F. Paul Calamita (WV Bar No. 8789)
        AQUALAW PLC
        6 S. 5th Street
        Richmond, Virginia 23219
        paul@aqualaw.com
        (804) 716-9021 (phone)
        (804) 716-9022 (fax)

Dated: March 31, 2016