IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SANITARY BOARD OF THE CITY
OF CHARLESTON, WEST VIRGINIA,

        Plaintiff,

v.                                    CIVIL ACTION NO. 2:16-cv-03060

SCOTT PRUITT, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss of the United States Environmental Protection Agency and Scott Pruitt, Administrator (collectively, "EPA").[1] (ECF No. 21.) For the reasons that follow, the motion is **GRANTED**.

*I.    BACKGROUND*

This case began as a citizen suit brought pursuant to the Clean Water Act ("CWA"). Plaintiff Sanitary Board of the City of Charleston, West Virginia ("Sanitary Board") challenged EPA's failure to determine whether West Virginia's site-specific water quality standard for effluent copper was consistent with the requirements of the CWA. The Sanitary Board further alleged that in circumstances that obligated the agency to approve the standard, EPA had refused to act. Litigation was scarcely underway when EPA issued its final decision disapproving the

---

[1] Scott Pruitt was confirmed as the Administrator of the United States Environmental Protection Agency on February 17, 2017, replacing former Administrator Gina McCarthy. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Pruitt is automatically substituted as a Defendant to this action.

water quality standard.  With the Court's leave, the Sanitary Board then filed a Supplemental Complaint challenging EPA's disapproval of the standard under the Administrative Procedure Act ("APA").  The Sanitary Board's original claims—those invoking the CWA's citizen suit provision—are the subject of the instant Motion to Dismiss.

The CWA's purpose is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  To that end, the CWA requires states to establish water quality standards for each body of water within their borders.  States do so by designating the intended uses for each of their waterways and creating water quality criteria to support such uses.  § 1313(a)–(c).  Water quality standards often operate to limit the introduction of pollutants into the nation's waterways and serve as a basis for imposing limits on discharges from wastewater facilities like the one operated by the Sanitary Board.

The CWA also requires each state to review and modify its water quality standards as needed every three years and submit any revisions for approval by EPA.  § 1313(c)(2)(A).  In West Virginia, the West Virginia Department of Environmental Protection ("WVDEP") develops water quality standards and submits them for adoption by the legislature and approval by the Governor.  *See* W. Va. Code § 22-11-7b(a).  EPA is then charged with reviewing any new or revised standard to determine if the standard is consistent with the CWA and applicable regulations.  §§ 1313(c)(2)(A), (c)(3). The statute requires the EPA to act within 60 days if it approves the standard or within 90 days if the standard is disapproved.  § 1313(c)(3).

With that background, the Court turns to the facts alleged in the Complaint.  The Sanitary Board is the public sewer utility for the City of Charleston, West Virginia.  The Sanitary Board operates a wastewater treatment plant serving customers in Charleston and surrounding Kanawha

County. Sewage treated by the Sanitary Board's wastewater treatment plant is discharged to the Kanawha River under the terms of a permit issued by the WVDEP. The permit imposes pollutant-specific effluent limits designed to ensure that discharges from the treatment plant do not cause pollutant levels in the Kanawha River to exceed the controlling water quality standard. (Compl. ¶ 20.)

The WVDEP has established water quality criteria for copper levels in the Kanawha River to protect aquatic life. (Compl. ¶ 22 (citing W. Va. Code R. § 47-2, App. E, Tbl. 1, § 8.10).) These criteria mirror EPA's national recommended copper criteria. In certain circumstances, however, and because EPA acknowledges that its laboratory-derived criteria may be too restrictive given the conditions of specific waterways, EPA permits the WVDEP to develop site-specific water quality criteria to use in lieu of the national standard. The process allows for the development of a "water effect ratio" to calculate site-specific water quality criteria for copper at a particular location of a river. (*Id.* ¶ 24.)

In 2012, after consultation with the WVDEP, the Sanitary Board began the process of developing a water effect ratio for copper at the location where discharges from its treatment plant enter the Kanawha River (the "Copper Standard"). (Compl. ¶ 25.) The WVDEP, in turn, consulted extensively with EPA during the process of revision. The Sanitary Board alleges that the WVDEP's communication with EPA during this period reveals that EPA had concluded, long before submission of the standard for formal agency review, that the forthcoming Copper Standard met the CWA's requirements. In a letter from EPA to WVDEP dated July 21, 2014, EPA stated:

> The U.S. EPA is supportive of . . . the copper water effect ratio (WER) for the Sanitary Board for the City of Charleston (47CSR2 7.2.d.19.2). EPA has reviewed the information on how the WER was derived and finds that it is consistent with EPA current guidance in the March 2001 *Streamlined Water-Effect Ratio*

3

>   *Procedure for Discharges of Copper* (EPA-822-R-01-005). Our only comment would be that the regulation needs to specify whether it is a dissolved or total recoverable WER.

(Compl. ¶ 31.) In response to EPA's suggestion, the WVDEP amended the Copper Standard to clarify that the standard applies to "total recoverable copper." (*Id.* ¶ 32.)

Ultimately, the WVDEP revised West Virginia's water quality standards to include the Sanitary Board's Copper Standard for the Kanawha River. Following a period of public comment, the standards were adopted by the West Virginia legislature and approved by the Governor in March 2015. The final water quality standards were submitted to EPA Region 3 for final review on or about June 25, 2015. (*Id.* ¶ 33.) Thus, the CWA required EPA to act within 60 or 90 days to approve or disapprove the standards—by approximately August 24 or September 23, 2015. (*Id.* ¶ 34.) However, on May 21, 2015, and despite indicating its general satisfaction with the Copper Standard on an earlier date, EPA notified the WVDEP that it would not approve the Sanitary Board's Copper Standard until the United States Fish and Wildlife Service ("FWS") reviewed the results of a survey of freshwater mussel species near the wastewater treatment plant.[2] (*Id.* ¶ 35.) By the time the Sanitary Board filed its Complaint on March 31, 2016, EPA had not acted to approve or disapprove the Copper Standard.

The Sanitary Board's Complaint includes two counts, both brought under the CWA's citizen suit provision. 33 U.S.C. § 1365(g). The first alleges a violation of the nondiscretionary duty to act within the deadline prescribed by the CWA. (Compl. Count I.) The second claims a violation of EPA's ostensible "nondiscretionary duty to approve" the Copper Standard. (*Id.*

---

[2] The allegation that EPA took action in May 2015 to confer with the FWS seems incongruous with facts that the State did not submit the Copper Standard for review until June 2015. However, because the precise dates of these events are immaterial to the Court's analysis, the Court uses those set forth in the Complaint.

4

Count II.) As litigation commenced, EPA continued to press the WVDEP to complete the mussel survey requested by the FWS. The WVDEP completed the survey on June 7, 2016. (Supp. Compl. ¶ 30.) On July 19, 2016, EPA sent a letter to the WVDEP disapproving the Sanitary Board's Copper Standard. The Sanitary Board obtained leave of Court to file a Supplemental Complaint, which it filed on November 17, 2016. The Supplemental Complaint adds claims under the APA that EPA's disapproval of the Copper Standard was arbitrary and capricious, (Count III), contrary to law and in excess of statutory authority, (Count IV), and without observance of the procedure required by law, (Count V).

EPA moves to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The motion, having been fully briefed, is now ripe for the Court's review.

## II. LEGAL STANDARD

A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action. "Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: 'facial attacks' and 'factual attacks.'" *Adkins v. United States*, 923 F. Supp. 2d 853, 856 (S.D. W. Va. 2013) (citing *Thigpen v. United States*, 800 F.2d 393, 401 n. 15 (4th Cir. 1986)). A "facial attack" questions whether "the allegations of the complaint are facially []sufficient to sustain the court's jurisdiction." *Thigpen*, 800 F.2d at 401 n. 15. In such a case, the court must accept the allegations as true and proceed to consider the motion as it would a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Id.* EPA brings a facial attack to the Court's jurisdiction.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a civil complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.

1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III.  DISCUSSION

EPA moves to dismiss both counts of the Sanitary Board's original Complaint. EPA argues that Count I is moot because EPA has taken action, albeit untimely action, to disapprove the Copper Standard. As for Count II, EPA seeks dismissal on grounds that the CWA does not establish a nondiscretionary duty to *approve* water quality standards, only to approve or disapprove them. The Sanitary Board agrees that Count I is now moot. In light of this concession, the Court **GRANTS** the Motion to Dismiss Count I. The Sanitary Board opposes the dismissal of Count II, however, and it is to this claim that the Court now turns its attention.

Federal law authorizes "any citizen" to "commence a civil action on his own behalf . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty . . . which is not discretionary with the Administrator." 33 U.S.C. § 1365(a). "A clearly mandated, nondiscretionary duty imposed on the Administrator is a prerequisite for federal jurisdiction under the CWA citizen suit provision." *Miccosukee Tribe of Indians of Fla. v. EPA*, 105 F.3d 599, 602 (11th Cir. 1997); *Monongahela Power Co. v. Reilly*, 980 F.2d 272, 276 (4th Cir. 1992). The term "nondiscretionary duty" is construed narrowly, *Monongahela Power*, 980 F.2d at 276 n. 3, and courts can only compel EPA's performance of "purely ministerial" acts. *Envtl. Def. Fund v. Thomas*, 870 F.2d 892, 899 (2d Cir. 1989); *see also WildEarth Guardians v.*

6

*McCarthy*, 772 F.3d 1179, 1182 (9th Cir. 2014) (finding "nondiscretionary nature of the duty must be clear-cut"). If an act is discretionary, jurisdiction does not lie. *Dist. of Columbia v. Schramm*, 631 F.2d 854, 859 n. 10 (D.C. Cir. 1980). In this case, the parties dispute whether the Sanitary Board has plausibly alleged the existence of a nondiscretionary duty on the part of EPA to approve the Copper Standard.

The Sanitary Board seeks to compel EPA's performance under § 1313(c)(3). That provision concerns EPA's obligation to review new or revised water quality standards and directs as follows:

> If the Administrator, within sixty days after the date of submission of the revised or new standard, determines that such standard meets the requirements of this chapter, such standard shall thereafter be the water quality standard for the applicable waters of that State. If the Administrator determines that any such revised or new standard is not consistent with the applicable requirements of this chapter, he shall not later than the ninetieth day after the date of submission of such standard notify the State and specify the changes to meet such requirements.

33 U.S.C. § 1313(c)(3). The statute unquestionably imposes a nondiscretionary duty on EPA to either approve or disapprove a new or revised water quality standard within the statutory timeframes. *Miccosukee Tribe*, 105 F.3d at 602 (summarizing EPA's duty under § 1313(c)(3) to "review the state's submission, and either approve or disapprove the new or revised standards"); *City of Dover v. EPA*, 956 F. Supp. 2d 272, 278 (D.D.C. 2013) (finding that EPA has a nondiscretionary duty to review all new and revised water quality standards, approving or disapproving them within a set time); *see also Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005) (construing a similar provision of the Clean Air Act to impose a nondiscretionary duty to act, that is, to approve or disapprove state implementation plans). The Sanitary Board, however, goes a step further. The Sanitary Board contends that there are several other

7

nondiscretionary duties embedded within the statutory process set forth in § 1313(c)(3), namely, an obligation to approve water quality standards that meet the requirements of the CWA and a duty to notify a state of EPA's approval within 60 days.[3] The Sanitary Board alleges that because EPA determined, vis-a-vis its July 21, 2014 letter and prior to consultation with the FWS, that the Copper Standard comported with the CWA, EPA was compelled to approve the standard and had no discretion to act otherwise.[4]

The Sanitary Board's reading of the statute is untenable. By its plain language, the statute dictates that a standard is subject to approval "[i]f the Administrator . . . determines that such standard meets the requirements of this chapter." § 1313(c)(3). Those requirements are expressed as eight factors EPA uses to determine whether a water quality standard is scientifically defensible and protective of designated uses. *See* 40 C.F.R. § 131.5(a). These technical questions "require the sort of scientific judgment that is the 'hallmark' of agency discretion." *Envtl. Def. Fund*, 870 F.2d at 900 (citing *Kennecott Copper Corp. v. Costle*, 572 F.2d 1349, 1354 (9th Cir. 1978)). If EPA determines that the standard does not meet the CWA's demands, EPA has the discretion to disapprove the standard, as it has done here.

The Court is unable to locate—and the Sanitary Board has not put forward—a single case construing the statute as imposing a nondiscretionary duty to *approve* a water quality standard.

---

[3] To the extent the Sanitary Board reads § 1313(c)(3) to impose a nondiscretionary duty on EPA to notify a State of its approval of a water quality standard under review, the Sanitary Board has not included such allegation in the Complaint. Count II alleges only a violation of the duty to approve the standard, not a violation of any duty of notification. The discussion herein will be limited to those allegations contained within the Complaint.

[4] As a secondary argument, EPA contends that its July 2014 comment letter cannot plausibly be construed as an approval of the proposed Copper Standard. The Court need not reach this argument given its finding that § 1313(c)(3) does not include a nondiscretionary duty to make a particular decision as to new or revised standards.

The district courts to have addressed the question have held that "[t]he EPA has discretion to approve or reject the new or revised standards, but its duty to review a new or revised standard is mandatory." *Friends of Merrymeeting Bay v. Olsen*, 839 F. Supp. 2d. 366, 372 (D. Me. 2012); *see also Maine v. McCarthy*, No. 1:14-cv-00264-JDL, 2016 WL 6833935, at *2 (D. Me. Nov. 18, 2016) ("Reviewing the water quality standards is mandatory; approving or rejecting them is discretionary." (citing *Friends*, 839 F. Supp. 2d at 372)). The Sanitary Board acknowledges that EPA reviewed the Copper Standard. As such, there is no unfulfilled duty under § 1313(c)(3) for the Court to compel EPA to perform. The Court agrees with EPA that the Sanitary Board's contention that the facts alleged could lead to only one action—approval of the Copper standard—is not a claim that can be pursued in a nondiscretionary duty suit.

This does not leave the Sanitary Board without a remedy. EPA argues that the Sanitary Board's claim is properly asserted under the APA as a claim that EPA's action was arbitrary or capricious. Indeed, the case upon which the Sanitary Board chiefly relies, *National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007), was not a nondiscretionary duty suit but a suit challenging agency action under the APA. In *Defenders of Wildlife*, the Supreme Court held that where the CWA provides a list of factors for use by EPA in determining whether to approve a state permitting program, and EPA determines the permitting program satisfies each of the factors, EPA "does not have the discretion" to deny the application. *Id.* at 661. The Supreme Court's holding flows naturally from the standard of review applicable to claims of arbitrary and capricious agency action, which allows courts to vacate an agency's decision if it "'has relied on factors which Congress had not intended it to consider.'" *Id.* at 658 (quoting *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)). But it does not follow

9

that EPA can be said to have a "nondiscretionary duty" to approve the Copper Standard. As stated earlier, the Court has jurisdiction only to compel EPA to "perform purely ministerial acts, not to order the [EPA] to make particular judgmental decisions." *Envtl. Def. Fund*, 870 F.2d at 899. The authority of the Court is limited to ordering EPA to make a formal decision, not dictating which decision EPA ought to make. *Id.* The Sanitary Board's challenge to EPA's disapproval decision is therefore best pursued through the APA claims now alleged in Counts III through IV, not as a nondiscretionary duty suit. *See Am. Wildlands v. Browner*, 94 F. Supp. 2d 1150, 1153 (D. Colo. 2000) (considering a challenge to EPA's approval of Montana's water quality standards as arbitrary, capricious, and an abuse of discretion under the APA).

In conclusion, the Court finds that the Sanitary Board has not plausibly alleged a nondiscretionary duty on the part of EPA to approve the Copper Standard. This jurisdictional prerequisite lacking, the Court **DISMISSES** Count II.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** EPA's Motion to Dismiss. (ECF No. 21.) Counts I and II of the Complaint are hereby **DISMISSED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 16, 2017

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE