IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SANITARY BOARD OF THE CITY
OF CHARLESTON, WEST VIRGINIA,

    Plaintiff,

v.    CIVIL ACTION NO. 2:16-cv-03060

SCOTT PRUITT, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the court is the (1) Motion for Summary Judgment, filed by plaintiff Sanitary Board of the City of Charleston, West Virginia ("Sanitary Board") on September 28, 2017 [ECF No. 34]; and the (2) Cross-Motion for Summary Judgment, filed by defendants United States Environmental Protection Agency and Scott Pruitt, in his official capacity as Administrator (collectively, "EPA") on November 13, 2017 [ECF No. 36]. For the reasons stated below, the Sanitary Board's Motion for Summary Judgment is **DENIED** and the EPA's Cross-Motion for Summary Judgment is **GRANTED**.

    **I.**    **Background**

This case began as a two-count citizen suit brought pursuant to the Clean Water Act ("CWA"). At the time, the Sanitary Board argued that the EPA's failure to timely review a site-specific water quality standard for copper discharge into the Kanawha River ("Copper Standard") violated the agency's obligations under the CWA. Compl. ¶ 1. As a result of the EPA's failure to review the submitted Copper Standard within the statutory deadlines, according to the Complaint,

the Sanitary Board "is now subject to incorrect and overly stringent permit limits for the discharge of copper from its wastewater treatment plant," violations of which carry significant maximum statutory penalties. Compl. ¶ 2.

On July 19, 2016, only a few months after the commencement of this civil action, the EPA rejected the proposed Copper Standard on the ground that it would be inconsistent with the CWA. *See* EPA Letter [ECF No. 15-1]. Thereafter, the Sanitary Board moved to supplement its complaint, advancing three additional counts necessitating relief on grounds that the EPA's rejection of the Copper Standard was arbitrary and capricious (Count III), contrary to law and in excess of statutory authority (Count IV), and without observance of the procedure required by law (Count V). By order of Judge Thomas E. Johnston on June 16, 2017, the court dismissed both counts comprising the original complaint (Counts I and II) for lack of jurisdiction. On January 29, 2017, the Clerk of court reassigned this case and its three remaining counts to the docket of the undersigned judge.

The Sanitary Board is a public sewer utility that operates a wastewater collection system and treatment plant in the City of Charleston and the adjacent areas of Kanawha County, West Virginia. Sewage collected at the Sanitary Board's local plant is treated and discharged into the Kanawha River. A permit issued by the West Virginia Department of Environmental Protection ("WVDEP") imposes pollutant-specific effluent limits on the sewage discharged into the Kanawha River, such as copper, by the Sanitary Board to ensure compliance with the CWA.

The CWA requires the states to establish water quality standards for each body of water within their borders, and to review and modify if necessary its water quality standards every three years. *See* 33 U.S.C. § 1313(c)(2)(A). The current water quality standard adopted by the WVDEP for copper levels in the Kanawha River mirrors the EPA's 1986 national recommended water

quality criteria for aquatic life. The EPA's national recommended water quality standards are uniform, and apply evenly to each waterbody regardless of its particular composition. Recognizing that the composition of specific waterbodies varies across the nation, the EPA developed a protocol that allows for the creation of a local site-specific "water effect ratio" ("WER"), which reflects how effectively a particular waterbody mitigates the aquatic toxicity of certain effluent discharges. A WER-adjusted effluent discharge limitation, therefore, represents a site-specific modification of the nationalized water quality standards to reflect site-specific conditions.

West Virginia carries out the CWA's federally mandated requirement in two steps. First, the WVDEP develops water quality standards for each local waterbody and submits them for adoption by the legislature. Second, if adopted by the legislature, the Governor must still approve and sign the proposal. *See* W. Va. Code § 22-11-7b(a). Under the CWA, the EPA is charged with reviewing any new or revised water quality standard to determine if it is consistent with the CWA and applicable regulations. 33 U.S.C. §§ 1313(c)(2)(A), (c)(3). If, for example, the EPA determines that the WER-adjusted water quality standard is consistent with the CWA, then the WVDEP may incorporate the WER into a National Pollutant Discharge Elimination System ("NPDES") permit, such as the one binding the Sanitary Board. *See W. Va. Highlands Conservancy, Inc. v. Huffman*, 625 F.3d 159, 162 (4th Cir. 2010) (stating that NPDES "permits set forth limitations on the type and quantity of pollutants that will ultimately be released into navigable waters").

Therefore, in West Virginia, if a particular waterbody's WER reflects an ability to mitigate the aquatic toxicity of a certain effluent discharge greater than contemplated by the standardized EPA recommendations, then a facility operating under a WER-adjusted permit could exceed the EPA's nationally recommended effluent discharge standard without penalty—provided, of course,

that it does not exceed the modified standard. In this case, the Sanitary Board submitted a proposed WER to the EPA of 5.62 for copper, which – if approved and adopted into its permit with the WVDEP – would have allowed the Sanitary Board to discharge copper into the Kanawha River at a rate 5.62 times the default national copper standard.

During the course of this litigation, but after the EPA rejected the Sanitary Board's WER proposal and the plaintiff amended its complaint, the WVDEP reissued the Sanitary Board a NPDES permit to operate and maintain an existing wastewater collection system on June 13, 2017 (the "2017 Permit"). *See* Defs.' Cross-Motion for Summ. J., Ex. A ("WVDEP Permit") [ECF No. 36-1], Ex. B ("Permit Fact Sheet") [ECF No. 36-2], Ex. C ("Permit Fact Sheet Addendum") [ECF No. 36-3]. The WVDEP expressly acknowledged that the 2017 Permit did not take into consideration a WER for copper, given the absence of EPA approval. *See* Permit Fact Sheet Addendum at 1. Therefore, in order for the 2017 Permit to comply with the CWA, the WVDEP defaulted to the effluent discharge limitation for copper recommended by the EPA and adopted by West Virginia.

Of particular importance, the WVDEP also concluded that an effluent discharge limitation on copper was not necessary throughout the operation of the 2017 Permit. In fact, the WVDEP did not subject the Sanitary Board to any limitation on the discharge of effluent copper because it concluded that there is no reasonable probability that the Sanitary Board would violate the default water quality standard for copper using a lognormal reasonable potential analysis. *See* Permit Fact Sheet at 6, 9, 20 ("Monitoring requirements only are established for copper."); Pl.'s Reply Memo. in Supp. of Mot. for Summ. J & Resp. to Cross-Mot. for Summ. J. at 11 (admitting that "[the plaintiff's] copper limit has been removed") [ECF No. 38].

On November 13, 2017, the EPA cross-moved for summary judgment, arguing that the issuance of the 2017 Permit, which determined that "recent effluent data is indicative that there is no longer a [reasonable potential] for [a copper] parameter" and that the Sanitary Board has "no reasonable potential to violate [effluent limitations] protective of the [water quality criteria]" for copper, renders the complaint and its supplement moot. *See* Resp. to Pl.'s Mot. for Summ. J. & Memo. in Supp. of Cross-Mot. for Summ. J. at 8-9 (citing Permit Fact Sheet at 9). Specifically, the EPA asserts that the Sanitary Board can no longer demonstrate "a legally cognizable interest in the outcome" of this case. *Id.* at 10 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

The Sanitary Board filed a Response to the Cross-Motion for Summary Judgment on December 1, 2017, disputing the EPA's assertion that its claims are moot. According to the Sanitary Board, there are six reasons why its claims are not moot: (1) it paid for the Copper Standard; (2) it is the sole beneficiary of the rejected Copper Standard; (3) it is currently affected by existing the water quality criterion for copper; (4) it is required to monitor copper discharge and the permit continues to be subject to modification; (5) a finding that the claims at issue are moot would be inconsistent with precedent; and (6) its claimed injury is ongoing and capable of repetition.

On December 12, 2017, the EPA filed a Reply in support of its Cross-Motion for Summary Judgment. [ECF No. 39]. Thus, this matter is ripe for adjudication.

**II.    Legal Standard**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

5

249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

**III.  Discussion**

Article III of the Constitution bestows upon the Judicial Branch the authority to adjudicate "Cases" and "Controversies." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (citing U.S. Const. art. III § 2). "When a case or controversy ceases to exist—either due to a change in the facts or the law—'the litigation is moot, and the court's subject matter jurisdiction ceases to exist.'" *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017). "Put differently, 'a case is moot [and no longer justiciable] when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Powell v. McCormack*, 395 U.S. 486,

496 (1969)); *see also United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) ("It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed.")

To be justiciable, a plaintiff must show (1) "that he 'has sustained or is immediately in danger of sustaining some direct injury . . . or threat of injury [that is] both 'real and immediate,' not 'conjectural' or 'hypothetical'"; (2) that is fairly traceable to "the challenged official conduct"; and (3) the injury "is likely to be redressed by a favorable judicial decision." *Shenandoah Valley Network v. Capka*, 669 F.3d 194, 202 (4th Cir. 2012) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 101-02 (1983) (citations omitted); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Nike, Inc.*, 568 U.S. at 91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009) (stating that a "dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words 'Cases' and 'Controversies.'")).

As noted above, the Sanitary Board contends that its cause of action remains justiciable for six different reasons. Among its primary contentions is the imposition of a monitoring obligation pursuant to the terms of the 2017 Permit, which states, "Effluent monitoring, once per quarter, is prescribed in order to collect data to check for reasonable potential [to exceed the prescribed effluent discharge limitations] at next permit reissuance." Permit Fact Sheet at 9. Reflecting upon this clause, the Sanitary Board argues that it continues to operate under the threat of a reinstitution of a discharge limitation; either upon the issuance of the next permit or sooner, through modification of the 2017 Permit under West Virginia law. *See* W. Va. Code R. § 47-10-9. Had the

7

EPA approved the proposed Copper Standard, the Sanitary Board contends, this looming threat would be alleviated.

Here, by the Sanitary Board's own account, the alleged harm – that "it is one elevated copper sample away from" the modification of the 2017 Permit or the imposition of an effluent limitation upon the issuance of the next permit – is either hypothetical or lacks imminence. Pl.'s Reply Memo. in Supp. of Mot. for Summ. J. & Resp. to Cross-Mot. for Summ. J. at 11-12. In doing so, the Sanitary Board rests the foundation of its justiciable arguments on conjecture; i.e., that the alleged adverse impacts of the challenged conduct *could* only be realized upon the occurrence of a condition subsequent. *See Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 536 (6th Cir. 2011) ("Imminence is a function of probability."), *rev'd on other grounds*, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012); *Gen. Ret. Sys. of City of Detroit v. Snyder*, 822 F. Supp. 2d 686, 695 (E.D. Mich. 2011) (finding a lack of standing where "numerous future events—all of which are entirely speculative—would have to occur in order for Plaintiffs to sustain the constitutional injuries alleged in this action").

In seeking to prevent summary judgment, the Sanitary Board makes no effort to show that an elevated copper sample prompting the imposition of a limitation on the discharge of effluent copper is "certainly impending." *Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice. . . . In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." (citation omitted)); *Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) (noting the Supreme "Court's long-established requirement that 'threatened injury must be certainly impending to constitute injury in fact"), *cert. denied sub*

*nom. Beck v. Shulkin*, 137 S. Ct. 2307 (2017). Nor does the plaintiff, to the extent any of these allegations could be interpreted to constitute an immediate harm, articulate how operating under a permit with *no expressed limitation on copper discharge* when it believes it should operate under a permit imposing *a limitation 5.62 times the state's limitation on copper discharge* represents a concrete injury, or how a favorable determination would effectuate real relief. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (stating that "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed" (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895))))).

Insofar as the Sanitary Board claims that the challenged conduct has currently positioned it with an increased probability of future harm, courts have previously rejected such arguments – absent sufficient evidence of concreteness – as inconsistent with Article III's "case" or "controversy" requirement. *See Shain v. Veneman*, 376 F.3d 815, 818 (8th Cir. 2004) (stating that a "close reading" of several circuit cases reveals that a heightened risk of future harm is only recognized as an injury in fact when there is sufficient evidence "to take the probability of harm out of the realm of hypothetical and speculative"); *Kamal v. J. Crew Grp., Inc.*, No. 2:15-0190 (WJM), 2016 WL 6133827, at *2 (D.N.J. Oct. 20, 2016) ("Where the alleged injury is heightened risk of future harm, the allegations must "entail a degree of risk sufficient to meet the concreteness requirement." (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016))); *see also Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005) ("[W]ere all purely speculative 'increased risks' deemed injurious, the entire requirement of 'actual or imminent injury' would be rendered moot . . . .").

Here, the Sanitary Board makes no persuasive argument that removes the risk of harm from the realm of hypothetical and speculative and into the realm of concreteness. In any event, as is the case here, constitutional and prudential considerations would advise against the judicial appraisal of the generalized challenged conduct here, because a later challenge to specific conduct that has real, direct, and immediate influence on the aggrieved party would place the present "controversy" on much surer footing. *See Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967) (declining to exercise judicial review because "no primary conduct [was] affected[,] . . . no advance action is required[,] . . . [and] no irremediable adverse consequences flow from requiring a later challenge"); *Miller v. Brown,* 462 F.3d 312, 319 (4th Cir. 2006) ("A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties."); *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208-09 (4th Cir. 1992) (considering whether a case is ripe by measuring "the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law").

The Sanitary Board also does not argue that the obligation to monitor the discharge of copper constitutes a legally cognizable particularized harm that is fairly traceable to the EPA's challenged conduct. *See Adkins v. Rumsfeld*, 464 F.3d 456, 465 (4th Cir. 2006) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984) (stating that a core component for standing is that the plaintiff allege personal injury fairly traceable to the defendant's alleged unlawful conduct), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)). Rather, the Sanitary Board alleges without any factual support that but-for the challenged conduct, the duty to monitor the concentration of copper in its effluent discharge would not have been imposed.

This argument is unavailing for several reasons. First, the Sanitary Board's argument that its copper discharge may exceed the permit's Maximum Allowable Head Works Loading, which it claims is correlated to the 2017 Permit's water quality standard, is hypothetical and has no bearing on whether a WER-adjusted permit would not include a monitoring requirement. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (citations and internal quotation marks omitted)). Second, the Sanitary Board does not articulate beyond its bald claim that the monitoring requirement represents a concrete injury, particularly given its obligation to monitor the concentration of several other pollutants discharged in accordance with its 2017 Permit. *See Lujan*, 504 U.S. at 563 (stating that to survive summary judgment, the nonmoving party must "submit affidavits or other evidence showing, through specific facts," *inter alia*, the claim to injury and the legally cognizable interests at issue). In doing so, the Sanitary Board requests that the court infer from the record, without any guidance, a concrete and particularized harm absent any understanding of how a WER-adjusted permit would operate had one been implemented or how the alleged injury is directly attributable to the alleged conduct of the EPA. Therefore, the Sanitary Board's claims are moot. *See Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting *U.S. Parole Commc'n v. Geraghty*, 445 U.S. 388, 397 (1980))).

Next, the Sanitary Board attempts to save its claims by invoking the exception to the mootness doctrine for matters that are capable of repetition, yet evading review. According to the

Sanitary Board, it took approximately four years to guide its WER study through the West Virginia legislature and for the EPA to submit its rejection. In 2012, according to the plaintiff, the WVDEP gave the Sanitary Board only two years to become compliant with a re-imposed copper discharge limitation. Should it be again subjected to a copper limitation and placed on a two-year compliance schedule, the Sanitary Board suggests, the amount of time it takes to complete a WER study and chariot it through the legislative and administrative process is too protracted to seek proactive relief independently. The Sanitary Board continues, stating that it will therefore be at risk of non-compliant penalties if the EPA again rejects the proposed WER-adjusted standard and the Sanitary Board is forced to recommence litigation.

In the absence of a class action, jurisdiction on the basis of a dispute that is "capable of repetition, yet evading review . . . applies only in exceptional situations, where (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (alterations in original) (citation and internal quotations omitted); *see also J.W. v. Knight*, 452 F. App'x 411, 415 (4th Cir. 2011) ("[The plaintiff] bears the burden of demonstrating that the exception applies."). In this case, the Sanitary Board has failed to meet the high burden of demonstrating that this narrow exception applies.

Although it is possible that the same controversy could reoccur and be justiciable, the record does not contain sufficient facts for the court to find that it is both reasonably likely to reoccur, *and* "upon its reemergence, will again be quickly rendered moot before a court can render a decision with respect to it." *Clinchfield Coal Co. v. Dist. 28, United Mine Workers of Am.*, 45 F. Supp. 2d 513, 514 (W.D. Va. 1998) (citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)

(noting that the "capable of repetition, yet evading review" doctrine was developed in order to deal with matters which were quickly concluded, such that it was nearly impossible to litigate the validity of such matters prior to their becoming moot); *Linkenhoker v. Weinberger*, 529 F.2d 51, 53 (4th Cir. 1975) (stating that a finding of mootness is appropriate where the issue might rise again but will be able to be speedily disposed of by the court at that time)). Here, the Sanitary Board can only speculate that it may again be in a position to challenge some future hypothetical conduct of the EPA. In the event litigation is necessary to pursue an active claim, i.e., the EPA wrongfully rejects a WER-adjusted standard and the WVDEP imposes a compliance schedule on the Sanitary Board, the Sanitary Board is free to seek declaratory and injunctive relief in an action filed in federal district court at that time. *See Adams Hous., LLC v. City of Salisbury, Md.*, No. 17-2044, 2018 WL 1251717, at *2 (4th Cir. Mar. 12, 2018) (rejecting the plaintiff's argument "that the City has arbitrarily and inconsistently enforced the Ordinance in the past and will continue do to so in the future" as "[t]hese contentions . . . do not demonstrate a reasonable expectation that the same action will recur"). In addition, given that the 2017 Permit does not expire until June 12, 2022, the Sanitary Board has not made a sufficient showing that its claim evades review. *See* WVDEP Permit at 9; *N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1435 (2d Cir. 1992) (finding that a controversy does not evade review when "there should be ample time for full review of the case while it remains a live controversy"); *but cf. Kingdomware Techs., Inc.*, 136 S. Ct. at 1976 ("We have previously held that a period of two years is too short to complete judicial review of the lawfulness of the procurement.").

    I conclude that the Sanitary Board has failed to demonstrate that the narrow exception to the mootness doctrine applies.

Last, the Sanitary Board's unadorned contentions that this case remains justiciable because it paid for the rejected Copper Standard and that it would benefit from a WER-adjusted standard lacks merit. Likewise, the Sanitary Board's conclusory assertion that it has a legally cognizable interest in ensuring that the water quality standards are correct lacks any evidentiary support in the record or legal justification. *See S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 484 (4th Cir. 2015) ("The League's disagreement with the wisdom of the Corps' challenged approvals in this case and the League's general belief that saltwater mitigation banks are a bad idea for the environment is insufficient to establish jurisdictional standing to continue the current litigation.").

### IV. Conclusion

For the reasons stated above, the Sanitary Board's Motion for Summary Judgment [ECF No. 34] is **DENIED** and the EPA's Cross-Motion for Summary Judgment [ECF No. 36] is **GRANTED**. The court **ORDERS** that judgment be entered in favor of the defendants and that this case be **DISMISSED** and **STRICKEN** from the docket of this court.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 29, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE